(March 20, 1973)

■ In the Matter of Joseph F. Hammerl, Appellant, v. Alfred C. Mavis, as Commissioner of the Department of Public Works, Respondent.

Per Curiam. This is an article 78 proceeding against the Commissioner of the Department of Public Works. Petitioner was denied a license as a master electrician. As the proceeding was based on an administrative hearing and questioned the interpretation of evidence, the matter should have been transferred to this court (CPLR 7804, subd. [g]). However, we can and do obviate that error by considering the matter on the record as if it had been transferred (Matter of D. H. K. Rest v. New York State Liq. Auth., 31 A D 2d 525). The petitioner passed the written examination and the field test. Respondent based his refusal to issue the license on the ground that petitioner did not have "at least seven and one-half (7½) years of experience in the installation, alteration and repair of wiring and appliances for Electric Light, Heat and Power as a journeyman Electrician." Concededly the period of seven and a half years is an error, as petitioner with his scholasitic credit was only required to have five and a half years of experience. But this error is inconsequential. Actually, petitioner had 14 years experience as a journeyman, and respondent's decision was based on the kind of work petitioner performed rather than on the period he was engaged in it. All of petitioner's experience was gained in working for Mainco. This company appeared to do a substantial business in electrical maintenance and repair, especially in elevators. However, petitioner did not work in this department but in one that did general industrial work. This included the installation and wiring of all manner of electrical appliances. The company did not, however, contract to install and wire newly constructed buildings, and it is apparent from the record of the hearings that this was the ground on which the application was faulted, and also the ground upon which the respondent's decision is sought to be sustained on this application. In so doing we believe the respondent went beyond and outside the requirements of the Administrative Code (ch. 30). While experience in installation is a requirement, nothing in the code specifies that that experience must be in new buildings. Of course an installation would mean a new wiring, and that petitioner did this was proved without contradiction. We agree that responsibility for licensing is placed on respondent, and his is the expertise. His conclusions should therefore not be lightly disturbed. However, the standards are set not by him but by statute, and when he goes beyond that standard his action is arbitrary. Judgment entered August 23, 1972, New York County is vacated and, pursuant to CPLR 7804 (subd. [g]), this court treats the matter as if transferred to it in the first instance and annuls the determination of the respondent on the law, without costs, and grants the petition. Capozzoli, J. (dissenting): There is no justification in law for interfering with the determination of the respondent in denying to petitioner a license as a master electrician. It must be emphasized that the work and responsibility of a master electrician are of the utmost importance to the safety of the community. As was said in Matter of Spielvogel v. Ford (1 N Y 2d 558, 565): "when an electrical accident occurs, it is invariably either fatal to a person involved or causes great damage". It is because of this that the City Council of the City of New York saw fit to enact the Electrical Code (Administrative Code, ch. 30) in an effort to "best protect its inhabitants from the fatal dangers which attend faulty and irresponsible electrical installations". (Matter of Spielvogel v. Ford, supra, p. 567.) This code, amongst other things, sets forth the qualifications for an applicant for license as a master electrician and provides for a license board to deter-

mine the character and fitness of applicant. Such determination is reported to the Commissioner of Public Works who then makes the decision as to whether the license should be issued. Viewing, as we all do, electric current as deadly in nature, I hesitate to substitute our judgment for that of the examiners in this case. We should not depend on a definition of a word used in the qualifications listed in section 30–10.0, as does the majority, but, rather, should understand and appreciate the intent of the enacting authority in the circumstances under which the word is used. The whole basis for the view and the conclusion reached by the majority is its belief that "While experience in installation is a requirement, nothing in the code specifies that that experience must be in new buildings" and concludes that the respondent went beyond the requirements of the code. In so doing the majority disregards the real and obvious purpose of the framers of the code. I think we can reasonably agree that, in enacting the code, the City Council was conscious of the nature of the buildings in our city and the great responsibilities which the master electrician must shoulder in discharging his duties. Therefore, we should construe the language of the code according to the intent of its authors and the circumstances under which it is used. Obviously there is a great difference in wiring a modern office building or a modern apartment house and in the wiring of a one-family house. In *Matter of Spielvogel* v. *Ford* (*supra*, pp. 563–564) the court said: "that the master electrician is the person who has '*the full responsibility*' for everything that is done. He has the full responsibility for the final determination in the manner in which the work is done and the materials which are used. * * * In other words, the master electrician is the person upon whom culpability is placed in the event that anything is improperly done, and it is he to whom the City of New York looks for full responsibility." In any event, forgetting for the moment the type of wiring installation which is envisioned in the code, it is important to note that, from the appellant's own statement, he has had very little, if any, experience in new wiring installation. In the statement of the appellant, made to the licensing board on December 1, 1970, we find the following: " Q. As such DMS card member you would not be doing installation work? A. Not primarily. Again, if I may refer to the Union, in the City you have your A buildings, or A work, a 40 story building is under the jurisdiction of the A Division and we could not touch that. *We, in the Industrial Division we do wiring, very limited, just on a minor basis, just a jobbing type of work.* Q. Will you have any occasion to actually make a new installation or would it be just a case of replacing something that had become defective? A. *More a situation where you replace something that had become defective or minor alterations or you remove a violation."* (Italics added.) Further light is shed upon the previous experience of the appellant by referring to the hearing of June 29, 1971, where we find the testimony of Richard M. Wheeler, president of appellant's employer, as follows: " MR. WHEELER: Basically, Mr. Hammerl has been a maintenance electrician. This work requires replacing old and installation of new wiring and devices and appliances. He has not worked full-time as a contractor's type of electrician. In other words, his duties have not consisted of installing one hundred percent of the time, installing new wiring and devices, but his duties have included certain installations of wiring and devices from time to time. MR. RILEY: On occasions? MR. WHEELER: That's correct. MR. RILEY: Not as a full-time employment? MR. WHEELER: Not in the classification of a maintenance electrician, no." The record fully sustains the conclusion reached by the respondent that the appellant did not have sufficient experience in the area of installation of new and original electrical equipment and it cannot be said that such conclusion is arbitrary. For these reasons

I dissent and vote to affirm. Markewich, J. P., Kupferman and Steuer, JJ., concur in *Per Curiam* opinion. Capozzoli, J., dissents in opinion, in which Murphy, J., concurs. Judgment, Supreme Court, New York County, entered on August 23, 1972, vacated and, pursuant to CPLR 7804 (subd. [g]), this court treats the matter as if transferred to it in the first instance and the determination of the respondent, dated December 2, 1970, annulled, on the law, without costs and without disbursements, and the petition granted.