CIBELLA R. BORGES, Petitioner, v ROBERT J. McGUIRE, as Police Commissioner of the New York City Police Department, et al., Respondents.

First Department, April 9, 1985

APPEARANCES OF COUNSEL

*Joseph O. Giaimo* of counsel (*Peter C. Roth* with him on the brief; *Giaimo & Vreeburg,* attorneys), for petitioner.

*Leonard Koerner* of counsel (*Francis F. Caputo, Diane J. Morgenroth* and *Leslie C. Kamelhar* with him on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for respondents.

## OPINION OF THE COURT

SANDLER, J.

In this transferred CPLR article 78 proceeding, the petitioner Cibella R. Borges seeks review and vacatur of a determination of respondents Robert J. McGuire (then New York City Police Commissioner) and Jamie A. Rios (Deputy Commissioner in Charge of Trials, NYPD) finding her guilty of charges arising out of her posing nude prior to becoming a police officer, and dismissing her from the police force on May 11, 1983 pursuant to the Administrative Code of the City of New York § 434a-14.0.

Petitioner's affiliation with the Police Department began in 1974 when, at the age of 17, she was employed part time by her neighborhood precinct as a typist and clerk. After graduating high school she attended John Jay College from September 1976 through February 1978, at which time she was appointed a Police Office Aide under the Federal Government's CETA program, and in that position, taught typing and was a scheduling officer at the Police Academy. In June 1979 petitioner took competitive examinations for the civilian civil service position of Police Administrative Aide (PAA) and for Police Officer, and soon thereafter, she began experiencing health problems. In August 1979, a large cyst was found on petitioner's right ovary. In September, an operation was performed to remove the cyst and half of the ovary. Petitioner passed both civil service examinations, and on November 16, 1979, she was appointed a PAA.

Meanwhile, petitioner's physical problems worsened. A few weeks after her operation she began experiencing urinary pain so severe as to cause her to lose consciousness on one occasion, and she was advised by a physician at Bellevue's emergency room that she had a very severe urinary infection. In December of 1979 petitioner's personal physician found another large cyst on her right ovary and it continued to grow during the next several months. In the course of obtaining advisory opinions

from other doctors, petitioner was told that there was a probability of a malignancy, and that in any event it appeared very unlikely that she would ever be able to bear children. In addition, petitioner failed her eye examination because of nearsightedness, and so was medically disqualified from being appointed a police officer.

Petitioner testified that she became depressed and withdrawn; she was afraid that she was going to die of cancer; that even if the newly discovered cyst was found to be benign she would never get married because of her inability to bear children. In early March, petitioner was told by her doctor that another operation was imperative, and could not be delayed much longer.

On March 28, 1980, petitioner was approached by Tony Currin, a photographer, who told petitioner she was beautiful, and that she would be a perfect model for the type of photographs he specialized in: pictures of nude female models for "girlie" magazines. Petitioner testified that it made her feel good to be perceived and appreciated as attractive. She posed for Currin, once on April 7 and again on April 22, 1980, the second session with another female model. Each session lasted for two or three hours. Petitioner was paid $150 for each session by the publisher of *Beaver* magazine, which had the right of first publication under an agreement with Currin. Petitioner signed releases explicitly prohibiting the use of her real name, but unlimited in time.

In July 1980, petitioner had an operation to remove the second cyst, which was found benign, but she was diagnosed as suffering from endometriosis, a condition wherein uterine lining is found in other pelvic organs, especially the ovaries, and characterized by cyst formation, adhesions and menstrual pain, which is treatable by chemotherapy. Some time in the latter part of 1980 (the record is not clear as to the date), petitioner passed her eye examination, but she was then disqualified because of her endometriosis. She thereupon undertook to persuade the Department's Supervising Chief Surgeon to reevaluate her eligibility, and on January 16, 1981 she was successful in overturning the prior finding of medical disqualification. On January 25, 1981 petitioner resigned her civilian position as a PAA, and on January 6, 1981 she was sworn in as a police officer subject to the completion of a final investigation into her candidacy by Sergeant James O'Hara.

On July 27, 1982 the Department discovered that petitioner was the person identified as "Nina" in the then current issue of

*Beaver* magazine. Further investigation revealed that photographs of petitioner with the model Emily had appeared in the February 1981 issue of *Beaver,* and two other magazines published by *Beaver: Girls On Girls* and *Damsels.* None of these magazines identified petitioner by her real name or as being an employee of the Department, and petitioner did not know until confronted with these magazines that the pictures she had posed for in April 1980 had ever been published. On July 30, 1982 petitioner was suspended from the Department without pay, and on August 2, 1982 she was served with four charges which, after two amendments, read as follows:

"1. Said Police Officer Borges, Shield #11722, on or about April, 1980, while assigned as a Police Administrative Aide, did wrongfully and without just cause, engage in off-duty employment without preparing Off-Duty Employment Notice (P.D. 407-164).

"Administrative Guide 319-23 — Off-Duty Employment

"Section 75 — Civil Service Law

"2. Said Police Officer Borges did knowingly omit employment information when preparing department form P.A.15 (Investigation of Applicant Questionnaire).

"P.G. [Patrol Guide] 104-1, page 2, para. 3 — Conduct

"P.G. 104-1, page 1, para. 4 — Performance

"3. Said Police Officer Borges, on April 7th and April 22nd, 1980 did wrongfully and without just cause pose for licentious photos depicting simulated sodomy and/or masturbation and sign a release authorizing the unlimited and continuing use of said photos.

"P.G. 104-1, page 2, para. 3 — Conduct

"4. Said Police Officer Borges has wrongfully and without just cause brought discredit upon the Department in that she posed for licentious photos and signed a release authorizing the unlimited and continuing use of said photos for publication to wit:

| | |
|---|---|
| " 'Beaver' | February 1981 issue |
| " 'Girls on Girls' | Number 6, 1981 issue |
| " 'Damsels' | Number 8, 1982 issue |
| " 'Beaver' | September 1982 issue |
| " 'Screw' | Number 704, August 1982 issue |
| " 'Pub' | December 1982 issue |

"P.G. 104-1, page 2, para. 3 — Conduct".

On April 11, 1983, respondent Rios found petitioner guilty of all the charges, after hearings held before him from November 29 through December 2, 1982, and recommended that she be dismissed from the Department. That recommendation was approved by respondent McGuire, and on May 11, 1983 petitioner was dismissed from the Department pursuant to the Administrative Code of the City of New York § 434a-14.0. That section provides in pertinent part:

"a. The [police] commissioner shall have power, in his discretion, on conviction by him, or by any court or officer of competent jurisdiction, of a member of the force of any criminal offense, or neglect of duty, violation of rules, or neglect or disobedience of orders, or absence without leave, or any conduct injurious to the public peace or welfare, or immoral conduct or conduct unbecoming an officer, or any breach of discipline, to punish the offending party * * *

"b. Members of the force, except as elsewhere provided herein, shall be [disciplined] * * * only on written charges made or preferred against them, after such charges have been examined, heard and investigated by the commissioner, or one of his deputies".

■ The threshold issue presented is whether the Department had jurisdiction to commence disciplinary proceedings against petitioner with regard to conduct that occurred prior to petitioner's appointment as a police officer, and at a time when petitioner was a civilian employee of the Department in the competitive civil service, a position from which she had resigned long before disciplinary proceedings were commenced. A study of the governing statutory sections makes it clear that the Department lacked jurisdiction to commence disciplinary proceedings with regard to behavior occurring under the described circumstances, and that accordingly the determination of the Department, to the extent that it rested upon an adjudication of guilt with respect to specifications 1, 3 and 4, must be vacated. Indeed, it also appears clear that jurisdiction to address the issue raised by petitioner's conduct under the described circumstances is vested exclusively in the Personnel Director of the City of New York under the provisions of Civil Service Law § 50 (4).

The disciplinary authority of the Department is derived from two statutory sections: (1) Civil Service Law § 75, which, as here relevant, confers jurisdiction on the Department to discipline civilian employees of the Department in the competitive civil service; and (2) New York City Administrative Code § 434a-14.0, which confers jurisdiction on the Commissioner to discipline "a member of the force".

The legal relationship between these two sections is defined by Civil Service Law § 76 (4) which provides in relevant part that nothing in section 75 "shall be construed to repeal or modify any general, special or local law or charter provision relating to the removal or suspension of officers or employees in the competitive class of the civil service of the state or any civil division." As the Court of Appeals made clear in a case concerning the disciplinary authority of the Fire Commissioner, the effect of section 76 (4) is to limit the disciplinary authority of the Commissioner with regard to uniformed officers to that which is set forth in the Administrative Code. (*Matter of Wein v City of New York,* 56 NY2d 758.) In *Matter of Wein,* the Court of Appeals held (p 760): "In imposing a penalty authorized by section 75 of the Civil Service Law, but not authorized by section 487a-12.0 of the Administrative Code, the commissioner acted without regard to subdivision 4 of section 76 of the Civil Service Law and, therefore, in excess of his authority." (*See, also, Matter of Cugell v Monaghan,* 201 Misc 607, 611.)

We find unpersuasive respondents' contention that Civil Service Law § 75 confers authority on the Department to initiate disciplinary proceedings against a former civilian employee of the Department in the competitive civil service for alleged misconduct occurring during the course of that employment. We find no support for that proposition in the language of the statute. As here pertinent, section 75 (1) provides as follows: "A person described in paragraph (a) * * * of this subdivision shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section." Paragraph (a) in turn provides: "A person holding a position by permanent appointment in the competitive class of the classified civil service".

Construing the statutory language in accordance with its plain meaning, it seems clear to us that the disciplinary authority conferred and regulated in Civil Service Law § 75 extends only to persons presently in the classified civil service, and does not extend to persons who had been in the classified civil service at some time in the past. (*See, Matter of Pierne v Valentine,* 291 NY 333.)

The cases relied upon by respondents in this branch of their argument are wholly inapposite, each involving a situation in which a disciplinary proceeding had been commenced against the civil service employee prior to his retirement. (*See, Matter of Brooklyn Audit Co. v Department of Taxation,* 275 NY 284;

*Matter of Baker v Kennedy,* 6 Misc 2d 589; *Matter of Flood v Monaghan,* 201 Misc 560.) The clear rule of these authorities is that an employee may not forestall the consequences of an adverse determination in properly commenced proceedings by retiring during their pendency. We discern no support in any of these authorities for the proposition that a disciplinary proceeding may be commenced after a person has retired from his civil service position. Respondents have called no case to our attention supporting this claimed power, nor indeed any in which it was even asserted prior to the instant case.

Similarly unpersuasive is the contention that Administrative Code § 434a-14.0 conferred authority on the Department to institute disciplinary proceedings with regard to behavior of a police officer that occurred prior to that officer's appointment to the force. The language of that section can scarcely be clearer in conveying its intent that the disciplinary authority conferred extends to behavior occurring while a person is "a member of the force". Thus, the disciplinary authority extends to members of the force with regard, *inter alia,* to "neglect of duty, violation of rules, or neglect or disobedience of orders, or absence without leave, or any conduct injurious to the public peace or welfare, or immoral conduct or conduct unbecoming an officer, or any breach of discipline."

Indeed, it is not entirely clear that respondents intended to claim that the Administrative Code confers general authority on the Commissioner to institute disciplinary proceedings with regard to conduct of police officers occurring before their appointment to the force. Rather, the underlying contention appears to rest upon the special circumstance that petitioner had been a civilian employee of the Department before resigning from that position in order to become a member of the force. That circumstance, it appears to be urged, gave rise to some undefined general disciplinary authority in the Commissioner, the source of which is not specified, that transcends the specific statutory grants of authority described above, and somehow authorizes the Commissioner to exercise disciplinary authority not specifically conferred by the controlling statutory sections. We are aware of no support for this proposition, which cannot be reconciled with the principle set forth in *Matter of Wein* (56 NY2d 758, *supra*), and violates the basic principle reaffirmed in *Commissioner of Labor v Hinman* (103 AD2d 886): "Since the jurisdiction of an administrative body or agency is limited by the powers granted by statute, any determination made without statutory power or in excess of such power is void".

We think it relevant to the issue presented to observe that the authority to inquire into the misconduct attributed to petitioner prior to her appointment as a police officer is squarely vested by Civil Service Law § 50 (4) (h) in the Personnel Director of the City of New York. That section specifically provides that: "[T]he state civil service department or appropriate municipal commission may investigate the qualifications and background of an eligible after he has been appointed from the list, and upon finding facts which if known prior to appointment, would have warranted his disqualification, or upon a finding of illegality, irregularity or fraud of a substantial nature in his application, examination or appointment, may revoke such eligible's certification and appointment and direct that his employment be terminated".

In this case the "appropriate municipal commission" is the Personnel Director of the City of New York, pursuant to Civil Service Law § 2 (4) which defines "municipal commission" as "the personnel officer of a city", New York City Charter § 811 which provides that "[t]he personnel director shall have all the powers and duties of a municipal civil service commission provided in the civil service law," and New York City Charter § 813 (a) (6), which empowers the personnel director to "revoke or rescind any certification or appointment by reason of the disqualification of the applicant or appointee under the provisions of the civil service law".

In referring to Civil Service Law § 50 (4) and the clear guidance that it gives with regard to jurisdiction in the instant case, we do not mean to intimate that the conduct attributed to petitioner would have warranted her disqualification if known prior to appointment. That issue is not before us, and we express no opinion whatever with regard to it.

A different issue is presented by specification 2, which alleges that the petitioner "did knowingly omit employment information when preparing department form P.A. 15 (Investigation of Applicant Questionnaire)", and asserted that such knowing omission was violative of "Patrol Guide 104-1, page 2, para. 3 — Conduct," and "Patrol Guide 104-1, page 1, para. 4 — Performance." Paragraph 3 in the above specification prohibits a police officer from engaging in "conduct prejudicial to good order, efficiency or discipline of the Department." Paragraph 4, which appears to be inapplicable to the conduct embraced in the specification, requires police officers to "make accurate, concise entries in department records in chronological order, without delay, using black or blue ink."

To the extent to which the specification is addressed to the original filling out of the questionnaire, which occurred long before petitioner's appointment as a police officer (and before the conduct in issue), and to any omissions in updates required of her prior to her appointment, it exceeded the disciplinary powers of the Department for reasons previously set forth at length. However, the record discloses that on April 14, 1981, after petitioner's appointment, petitioner was interviewed by Sergeant O'Hara, who reviewed the questionnaire with her for the purpose of updating the information required. In essence, the specification alleges that petitioner's failure to add the modelling sessions to her answer to the question which required her to list employment, was a knowing omission which constituted "conduct prejudicial to good order, efficiency or discipline of the Department." However, the record fails to disclose any evidence, much less substantial evidence, that petitioner knew that the two modelling sessions in which she had participated more than one year before, constituted "employment" of a kind that she was required to add to the questionnaire that she had filled out before the sessions.

Petitioner testified that she did not consider those sessions to constitute employment. She further testified, without contradiction, that when the forms were first given to her, she and the other applicants present were told that "the Department wasn't looking for every little item of employment * * * Just like they were not looking for everybody's medical illness that you had that would not affect you. They were only looking for the kinds of employment where you were there for a long period, on an almost steady basis."

It is true that Sergeant O'Hara testified that he reviewed each of the questions on the form with petitioner, and that in his opinion modelling sessions constituted employment of a kind that petitioner was required to include in the questionnaire. However, he did not testify that he gave any instructions to petitioner that would have conveyed to her his understanding of that which was embraced in the term "employment". Indeed, he did not testify that his understanding of that which was required was the general understanding in the Department, or that there existed any instructional material that embodied his interpretation, or that would have provided any assistance to petitioner in understanding that which was required. Nor was any evidence introduced that contradicted, directly or indirectly, petitioner's testimony as to the instructions in fact given to her and to other applicants at the time she received the questionnaire.

■ Under all the circumstances, we fail to perceive substantial evidence supporting the finding that petitioner, in April 1981, willfully omitted to provide employment information that she was required to provide. (*Cf. Matter of Valvo [Ross]*, 57 NY2d 116.)

In view of our earlier determination as to jurisdiction, it is unnecessary for us to address petitioner's arguments that charges 1, 3 and 4 were not supported by substantial evidence, and that the penalty imposed was shockingly disproportionate to the offenses alleged when considering petitioner's favorable performance record with the Department, her emotional turmoil concerning her then existing health problems, and her belief at the time the posing took place that she would never be a member of the Department.

Accordingly, the determination of the respondents dated May 11, 1983, finding petitioner guilty of certain charges and dismissing her from the force should be vacated and annulled, on the law, without costs, and the petition should be granted to the extent of reinstating petitioner as a New York City police officer from the effective date of her suspension from duty, and directing respondents to pay petitioner back pay retroactive to that date. (*See, Kaminsky v City of New York,* 15 NY2d 500; *cf. Picconi v Lowery,* 36 NY2d 221; *Matter of Scornavacca v Leary,* 38 NY2d 583.) The matter is remitted to Special Term for a determination of the amount due petitioner.

KUPFERMAN, J. P. (dissenting). At first blush, one would say what difference does nudity make? After all, there is plenty of it at the beach, certainly in motion pictures, and a great deal comes into the home on television. However, when one examines the photographs, as included in the various publications, it becomes clear that the determination should be confirmed.

One does not have to be a Potter Stewart (*see,* Mr. Justice Stewart concurring in *Jacobellis v Ohio,* 378 US 184, 197), to know pornography when you see it. Nudity is only the tip of the iceberg. This is genitals, explicit, kinky and hardcore, showing simulated sodomy and masturbation. Moreover, it is meant for general distribution and not in the privacy of one's home or office. (*See, Stanley v Georgia,* 394 US 557; *People v Onofre,* 51 NY2d 476; *cf. Walter v United States,* 447 US 649.)

While the health problems of the petitioner and her mental stress due thereto are deserving of sympathy and may possibly be in mitigation, they do not excuse the conduct involved. However, they raise a question as to petitioner's judgment. It has been made clear that the courts are not to second-guess the

action of a police person in an emergency. (*People v Benjamin,* 51 NY2d 267; *People v Chestnut,* 51 NY2d 14; *People v Reyes,* 91 AD2d 935, 936.) This can only be justified on the ground that the police must exercise immediate judgment in a stressful situation, and this presupposes an understanding of what is right and what is wrong. Lack of judgment is, at the very least, indicated here.

The petitioner did not merely sign a release for these photographs, she signed four releases for pay over a period of three weeks. In other words, it was not a spur of the moment activity.

As the majority opinion points out, the Administrative Code of the City of New York § 434a-14.0 (a) contains a morals clause. In view of the approach indicated in *Matter of Pell v Board of Educ.* (34 NY2d 222), whereunder we must give due credit to the conclusion of the agency involved, it cannot be said that the Police Department's determination in this matter is clearly wrong. (*Sierra v McGuire,* 60 NY2d 720, *revg* 91 AD2d 179, on dissenting opn of Alexander, J., p 185.)

The only legal issue with which we are confronted is whether an action prior to appointment may be the basis for removal. If it had occurred after the petitioner joined the police force, there would be no question that the action of the Police Commissioner should be sustained. However, it cannot be said that the Police Department is impotent in such a situation. If the State Liquor Authority can outlaw lewd and indecent "bottomless" dancing in licensed premises (*Matter of Highway Tavern v McLaughlin,* 105 AD2d 122 [2d Dept 1984]), which is a form of regulation not only of the licensee, but of what the public can see, the Police Department should be able to maintain some standard for the employees who must guard the public life and limb.

Asch and Bloom, JJ., concur with Sandler, J.; Kupferman, J. P., dissents in an opinion.

Determination of respondent Commissioner dated May 11, 1983, vacated and annulled, on the law, without costs and without disbursements, and the petition granted to the extent of reinstating petitioner as a New York City police officer from the effective date of her suspension from duty, and to direct respondents to pay petitioner back pay retroactive to that date. (*See, Kaminsky v City of New York,* 15 NY2d 500; *cf. Picconi v Lowery,* 36 NY2d 221; *Matter of Scornavacca v Leary,* 38 NY2d 583.) The matter is remitted to Special Term for a determination of the amount due petitioner.