■ In the Matter of MYRON DUNCAN, Appellant, v RAYMOND W. KELLY, as Police Commissioner of the City of New York, et al., Respondents. [841 NYS2d 237]—

Order and judgment (one paper), Supreme Court, New York County (Doris Ling-Cohan, J.), entered October 26, 2005, dismissing this proceeding seeking to annul respondents' determination that terminated petitioner's employment, affirmed, without costs.

The facts have been set forth by the dissent and need not be repeated here.

It is well settled that a probationary employee may be discharged for any or no reason, absent a showing that such dismissal was in bad faith, for a constitutionally impermissible purpose or in violation of law (*see Matter of Swinton v Safir*, 93 NY2d 758, 762-763 [1999]). Petitioner failed to meet his burden of proving dismissal in bad faith (*see Matter of Brown v City of New York*, 280 AD2d 368 [2001]). We reject the claim that his termination on December 18, 2003 was procedurally improper as based on prehiring conduct, over which exclusive authority would be vested in the Department of Citywide Administrative Services (*cf. Matter of Umlauf v Safir*, 286 AD2d 267 [2001]). To the contrary, it was petitioner's posthiring conduct, in making false and misleading statements to members of the Internal Affairs Bureau (IAB) concerning a crime he was allegedly involved in prior to his employment as a police officer, that provided ample basis for his termination. The dissents' adoption of petitioner's argument and the conclusion that respondents "summarily deem[ed] petitioner's answer to be lies," is unsupported by the record. The determination was based on an IAB investigation (which actually absolved petitioner of two other crimes); a redacted copy of the investigation report was provided to the court for review. These findings were reviewed by the Chief of Personnel of the New York Police Department and subsequently approved by the First Deputy Commissioner and the Police Commissioner and are entitled to substantial deference. No basis exists to disturb respondent's findings of credibility (*Matter of Berenhaus v Ward*, 70 NY2d 436 [1987]; *Matter of Alvarez v Kelly*, 2 AD3d 219 [2003]). These findings are entitled to great deference (*Matter of Batista v Kelly*, 16 AD3d 182 [2005]).

The motion court correctly distinguished this from action taken for prehiring conduct. Concur—Saxe, J.P., Marlow, Nardelli and Sweeny, JJ.

Catterson, J., dissents in a memorandum as follows: Because I believe the court below ignored precedent and allowed the Police Commissioner and the New York City Police Department (hereinafter referred to as NYPD) to circumvent Civil Service Law § 50 (4), I must respectfully dissent. In upholding the

NYPD's determination to terminate petitioner as a probationary police officer on the grounds that he made false statements about a preemployment incident, the court's decision was in direct contravention to our rulings in *Matter of Umlauf v Safir* (286 AD2d 267 [1st Dept 2001]) and *Borges v McGuire* (107 AD2d 492 [1st Dept 1985]). We found in *Umlauf* and *Borges* that statutory authority for investigation and termination for preemployment conduct as occurred here is vested in an independent body, the New York City Department of Citywide Administrative Services (hereinafter referred to as DCAS). (*See Borges*, 107 AD2d at 499; *Umlauf*, 286 AD2d at 268.)

In this case, NYPD's Internal Affairs Bureau (hereinafter referred to as IAB) conducted an interview with petitioner about a prehiring credit card incident that implicated his cousin in criminal activity. When petitioner denied knowledge of any such criminal activity, the IAB summarily determined that petitioner had lied and terminated him for making false statements.

Petitioner was appointed as a probationary officer with the NYPD on July 2, 2001, and he was assigned to patrol duties with the 122nd Precinct on Staten Island. In or about March 2003, the IAB opened an investigation into petitioner's background after a lead from a Staten Island cold case squad suggested that the petitioner "might have been" involved with guns and drug dealing prior to his employment, allegations ultimately deemed "unsubstantiated." However, as a result of this investigation, an incident involving a fraudulent use of a credit card to obtain merchandise in or about April 2000—approximately one year before petitioner joined the Police Department—came to light.

Petitioner was interviewed by IAB pursuant to section 206-13 of the NYPD Patrol Guide on or about July 15, 2003, regarding these allegations. Petitioner acknowledged that he had been present on the day of the incident but denied knowledge of attempted fraudulent credit card use. Petitioner stated that he was asked by his cousin to help him bring home a DVD player that his cousin had purchased at a Sears department store. Shortly after his cousin gave the Sears employee the receipt for the DVD player, two police officers came over to speak with him. His cousin was then chased by the police officers and store employees when he ran from the store. Petitioner told the IAB investigator that he did not know what had happened and no one from the Police Department or the store questioned him about the incident. Petitioner left Sears and proceeded to purchase a shirt from another store in the mall.

In response to a question during the IAB interview, petitioner

stated that he did not change into the newly-purchased shirt and that he left the store with the new shirt in a shopping bag. He also stated that he saw his cousin some months later but never asked about the incident. In a subsequent letter addressed to the Chief of the Department of the NYPD, petitioner wrote "[s]ome time [*sic*] later when we finally saw each other again, I did not ask him what actually happened to him on that day or why the cops were chasing him. I don't know what happened to him because of this event nor did I ask. I didn't want to be apart [*sic*] of anything that was going to hurt my future so I left that day." As a result of the interview, petitioner was placed on modified assignment on or about July 15, 2003.

On July 31, 2003 the IAB commanding officer wrote to the Police Commissioner with a request that charges be brought against petitioner for making false statements. The letter stated that investigators were able to prove that petitioner was a "willing participant" in the crime "in that when police arrived [petitioner] *discreetly* walked away from the service counter *so as not to be detected by police*" (emphasis added). Further, the letter stated that petitioner's statement about not changing his shirt was a false statement because "investigators [had] strong incriminating evidence that [petitioner] did in fact change his shirt to *avoid apprehension*" (emphasis added). There is, however, nothing in the record indicating what the "strong incriminating" evidence is for either the claim that petitioner changed his shirt or that petitioner did so specifically to avoid apprehension.

Subsequently, in a memorandum dated November 25, 2003, NYPD's Chief of Personnel, Rafael Pineiro, recommended that petitioner's employment be terminated because of the false statements. Pineiro noted that petitioner had received an overall grade point average at the Academy of 80.25, received eight demerit cards, and received one command discipline for the accrual of so many demerit cards. However, the reasons given for termination were that petitioner had "lied to the Internal Affairs Bureau during his official Patrol Guide 206-13 hearing" and "gave false and misleading statements." Pineiro's recommendation was approved by the First Deputy Commissioner and Police Commissioner Kelly. By a letter from the Employee Management Division of the NYPD dated December 18, 2003, petitioner was terminated as of that date.

On or about March 16, 2004, petitioner commenced this CPLR article 78 proceeding seeking, among other things, to annul respondents' determination terminating his employment as a probationary officer. Petitioner argued that his termination was

arbitrary and capricious and that the NYPD had no statutory authority to terminate him for prehiring conduct as this power vests exclusively with DCAS.

By a written decision dated October 25, 2005, Supreme Court denied the petition and dismissed the proceeding in its entirety. Without citing to any legal precedent or statutory authority, the court dismissed petitioner's claim that the NYPD's termination for preemployment conduct was procedurally defective and determined that "the NYPD's IAB is the proper body to investigate allegations of criminal conduct by a police officer prior to joining the Department." The lower court also rejected petitioner's contention that *Umlauf* and *Borges* are relevant precedent in this action.

In my opinion, petitioner correctly asserts that the NYPD was without authority to terminate his employment for the reasons given. Civil Service Law § 50 (4) (h) provides that: "the state civil service department or appropriate municipal commission may investigate the qualifications and background of an eligible after he has been appointed from the list, and upon finding facts which if known prior to appointment, would have warranted his disqualification, or upon a finding of illegality, irregularity or fraud of a substantial nature in his application, examination or appointment, may revoke such eligible's certification and appointment and direct that his employment be terminated . . . ." In this case the "appropriate municipal authority" is the Commissioner of DCAS pursuant to New York City Charter § 811. It provides that the Commissioner "shall have all the powers and duties of a municipal civil service commission provided in the civil service law or in any other statute or local law." Moreover, as already noted, it is well-settled in this jurisdiction that termination for prehiring conduct statutorily rests solely with DCAS. (*See Matter of Umlauf, supra; Borges v McGuire, supra.*)

I believe the lower court erred in attempting to distinguish *Umlauf* and *Borges*. In *Umlauf*, the petitioner was terminated for statements made at a posthiring interview regarding thefts that occurred preemployment. The NYPD determined that the petitioner in that case was not suited for the police force because of the way he had characterized these incidents as childish pranks. On appeal, this Court determined that "contrary to respondent's assertions, . . . petitioner was terminated [by respondent Police Commissioner] for his pre-hiring conduct and that [that] . . . was error." (*Matter of Umlauf*, 286 AD2d at 267.)

Supreme Court found that *Umlauf* was distinguishable

because the officer there admitted that he was involved in prior incidents and so had not made any false statements concerning those incidents during his posthiring interviews. However, this distinction is clearly not germane to the holding of *Umlauf*. Rather, *Umlauf* stands for the proposition that only DCAS is vested with the statutory authority to terminate a police officer for prehiring conduct. In that case, we observed that DCAS "is required to provide a written explanation of the reasons for termination and to afford the terminated employee an opportunity to submit an explanation and facts in opposition." (*Umlauf*, 286 AD2d at 268.) The NYPD cannot circumvent this process by creating a posthiring reason for termination that is solely based upon prehiring conduct as it did here by summarily deeming petitioner's answers to be lies about that prehiring incident. (*See also Borges*, 107 AD2d at 499 [finding that "the authority to inquire into the misconduct attributed to petitioner prior to her appointment as a police officer is squarely vested by Civil Service Law § 50 (4) (h)"].)

Moreover, all of the cases relied on by respondents are wholly inapposite since they involve situations where termination resulted from an incident occurring *during* employment as opposed to preemployment. Indeed, citation to these cases is nothing short of disingenuous because not a single case involves prehiring conduct. (*See Matter of Lomando v Kelly*, 33 AD3d 510 [1st Dept 2006] [upholding dismissal of the petitioner from his position as a probationary employee because of false and misleading statements made to police psychologists and to a ranking officer during his employment with the NYPD]; *see also Matter of Alvarez v Kelly*, 2 AD3d 219 [1st Dept 2003] [confirming dismissal of the petitioner from his position as a police officer upon findings that he made a false 911 call of a burglary in progress while off duty and made false statements concerning the call in his departmental interview]; *see also Matter of Castro v Safir*, 277 AD2d 123 [1st Dept 2000] [confirming dismissal of the petitioner from his position as a police sergeant because of deliberate false statements designed to protect a fellow officer made during an investigation]; *see also Matter of Swinton v Safir*, 93 NY2d 758 [1999] [upholding dismissal of the petitioner from his position as a probationary police officer because petitioner had misrepresented the facts in responding to questions during the investigation of an incident that occurred during his employment]; *see also Matter of Rainey v McGuire*, 111 AD2d 616 [1st Dept 1985] [confirming the petitioner's dismissal based on findings that petitioner had made false statements regarding unauthorized and prohibited off-duty employment at a tavern]; *see also Matter of Donofrio v City of Rochester*, 144

AD2d 1027 [4th Dept 1988], *lv denied* 73 NY2d 708 [1989] [confirming dismissal of petitioner from his position as a police officer for making deliberate false statements at a formal investigatory hearing concerning petitioner's arrest during his employment as a police officer].)

In the view of the foregoing, I believe that the lower court erred in denying the petition and dismissing the proceedings. In my view, the petition should be granted to the extent of reinstating petitioner as a probationary officer.

[*See* 9 Misc 3d 1115(A), 2005 NY Slip Op 51558(U).]