Murray v Town of N. Castle (2022 NY Slip Op 00675)





Murray v Town of N. Castle


2022 NY Slip Op 00675


Decided on February 2, 2022


Appellate Division, Second Department


Miller, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 2, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
ROBERT J. MILLER
LARA J. GENOVESI
DEBORAH A. DOWLING, JJ.


2020-04690
2020-04691
 (Index No. 68175/17)

[*1]Dennis Murray, respondent,
v
Town of North Castle, etc., appellant.



APPEALS by the defendant, in an action, inter alia, for declaratory relief and to permanently enjoin the defendant from maintaining a disciplinary proceeding against the plaintiff, from two orders of the Supreme Court (Joan B. Lefkowitz, J.), both dated May 12, 2020, and entered in Westchester County. The first order, insofar as appealed from, (1) granted that branch of the plaintiff's motion which was for summary judgment on the first cause of action, for a judgment declaring (a) that the defendant lacked the lawful authority to prefer the underlying disciplinary charges against the plaintiff and subject him to its disciplinary proceeding, and (b) that the plaintiff is immediately entitled to receive all retiree benefits set forth in a certain collective bargaining agreement, including health care coverage, payment for dental coverage, and lump sum payments for sick leave, vacation, and compensatory time accruals, (2) granted that branch of the plaintiff's motion which was for summary judgment on the second cause of action, to permanently enjoin the defendant from pursuing disciplinary charges against the plaintiff, and (3) granted those branches of the plaintiff's motion which were for summary judgment on so much of the remaining causes of action as sought injunctive relief. The second order denied the defendant's cross motion for summary judgment dismissing the complaint, and, in effect, for a declaration in its favor.



Keane & Beane, P.C., White Plains, NY (Jaclyn G. Goldberg and Lance H. Klein of counsel), for appellant.
Gould & Berg, LLP, White Plains, NY (Kim P. Berg of counsel), for respondent.



MILLER, J.


OPINION & ORDER
We are called upon in this case to navigate the interplay between various forms of equitable relief grounded in common law doctrine, principles of modern practice under CPLR article 78 and the Municipal Home Rule Law, and certain state-level policies regarding the right to collective bargaining and the authority of public officials over law enforcement. These issues have been raised as a result of the plaintiff's complaint, the central aim of which is to prevent the plaintiff's employer from holding him accountable for the serious disciplinary infractions that he allegedly committed in the course of his official duties as a police officer.
Contrary to the plaintiff's contentions, the equitable powers and legal doctrines that he seeks to invoke in this litigation do not shield him from the consequences of his actions. The orders reviewed on these appeals nevertheless evince confusion over the applicable legal principles. Given this confusion, and the gravity of the underlying subject matter, we undertake to provide additional clarity by setting forth our analysis in greater detail. For the reasons that follow, we conclude that the plaintiff is not entitled to any of the various forms of relief sought in the complaint.
I. Factual and Procedural Background
The plaintiff, a Detective Sergeant employed by the Town of North Castle Police Department, commenced this action against the Town for injunctive and declaratory relief, and to recover damages for breach of contract. The plaintiff alleged that the Town improperly preferred disciplinary charges against him after he had applied to the New York State and Local Employees' Retirement System (hereinafter the NYSLRS) for retirement benefits. The plaintiff contended that the NYSLRS had the exclusive authority to determine when the plaintiff's employment was terminated, and that the Town lacked the authority to subject him to disciplinary proceedings after the NYSLRS had certified the effective date of his retirement.
The plaintiff also alleged that, as a result of the pending disciplinary proceeding, the Town had refused to grant him certain other rights and benefits as set forth in a collective bargaining agreement (hereinafter the CBA) between the Town and the North Castle Patrolmen Benevolent Association (hereinafter the PBA). The complaint asserted five causes of action against the Town, which is the only defendant named in this action.
The first cause of action sought declaratory relief (see CPLR 3001), including a declaration that the Town's disciplinary proceeding against the plaintiff is "null and void" because the Town did not have the lawful authority to prefer any disciplinary charges or take any disciplinary action against the plaintiff after his application for retirement benefits became effective. The first cause of action also sought a declaration that the plaintiff was entitled to receive all retiree benefits set forth in the CBA, including health care coverage, payment for dental coverage, and lump sum payments for sick leave, vacation, and compensatory time accruals.
The second cause of action sought to permanently enjoin and prohibit the Town from pursuing any disciplinary charges against the plaintiff, and from maintaining books or records that reflected any such disciplinary charges.
The third cause of action alleged that the plaintiff was entitled to certain medical and dental benefits under the CBA, and sought to permanently enjoin the Town from withholding those benefits from the plaintiff. The third cause of action also sought to recover "incidental damages" for sums allegedly advanced by the plaintiff to cover certain medical and dental expenses.
The fourth cause of action alleged that the plaintiff had been denied access to certain benefits by the New York State Deferred Compensation Plan as a result of communications made by the Town regarding the disciplinary charges that had been preferred against the plaintiff. The fourth cause of action sought to permanently enjoin the Town from making any such communications.
Finally, the fifth cause of action sought to permanently enjoin the Town from refusing to pay him lump sum payments for sick leave, vacation, and compensatory time accruals, to which he was allegedly entitled under the CBA. The fifth cause of action alleged that the plaintiff was entitled to recover damages to compensate him for the Town's refusal to honor those provisions of the CBA.
The Town interposed an answer in which it alleged that the plaintiff, during the course of his employment as a police officer with the Town, had engaged in "serious and significant misconduct and incompetence in the course of his official duties." The plaintiff was notified in a hand-delivered letter dated September 16, 2016, that he was being placed on administrative leave, "effective immediately," while an investigation was conducted by the Town's Chief of Police (hereinafter the Chief of Police). The plaintiff was ordered to turn over his duty weapon and his police department shield, and he was barred from police department facilities and directed to refrain from engaging in any law enforcement activities.
After he was placed on administrative leave and notified of the investigation into his official conduct, the plaintiff, without giving notice to the Town, applied for retirement with the NYSLRS. The plaintiff later testified that his decision to retire was based, at least in part, on his receipt of the letter which had placed him on administrative leave.
On October 4, 2016, the plaintiff's retirement became effective with respect to the NYSLRS. On or about the next day, the Town received a letter from NYSLRS indicating that the plaintiff had applied for retirement with the NYSLRS effective October 4, 2016. Since the Town had not received any prior notification of the plaintiff's decision to retire, the Town, as a part of its standard practice, deemed the letter from NYSLRS a "written resignation" within the meaning of civil service rules governing the termination of service.
The Town took the position that it was authorized to disregard any written resignation submitted by the plaintiff and pursue the disciplinary charges that were under investigation at the [*2]time he attempted to unilaterally terminate his employment. Accordingly, after repeated attempts to interview the plaintiff had failed, the Chief of Police formally preferred disciplinary charges against the plaintiff on October 10, 2016. As relevant here, the plaintiff was alleged to have "engaged in an intimate sexual relationship with a [named] subordinate officer . . . that [a]ffected the performance of [his] duties." The plaintiff was charged with misconduct (50 specifications), incompetence (24 specifications), and insubordination (6 specifications) (hereinafter collectively the initial disciplinary charges). Additional allegations were subsequently set forth in amended disciplinary charges (hereinafter collectively the amended disciplinary charges).
The Town argued that the disciplinary proceeding was specifically authorized by state and local law, that its authority to subject the plaintiff to its disciplinary process was independent of any determination by the NYSLRS, and that the plaintiff could not evade responsibility for his official misconduct. The Town asserted that the plaintiff's eligibility for benefits under the terms of the CBA could be affected by the outcome of the pending disciplinary proceeding. The Town also contended, inter alia, that the action was barred by the statute of limitations and by the plaintiff's failure to exhaust administrative remedies that were available to him.
The plaintiff subsequently moved, by order to show cause, to enjoin the Town from prosecuting the disciplinary charges proffered against him pending resolution of the action. In an order dated October 12, 2018, the Supreme Court granted the motion and issued a preliminary injunction. The defendant appealed from the October 12, 2018 order (see Murray v Town of North Castle, ___ AD3d ____ [Appellate Division Docket No. 2018-12497; decided herewith]).
The plaintiff then moved, in effect, for summary judgment on the complaint. The Town opposed the plaintiff's motion and cross-moved for summary judgment dismissing the complaint and, in effect, for a declaration in its favor.
In an order dated May 12, 2020 (hereinafter the first order), the Supreme Court, inter alia, granted those branches of the plaintiff's motion which were for summary judgment on the first and second causes of action, and on so much of the remaining causes of action as sought injunctive relief. In denying those branches of the plaintiff's motion which were for summary judgment on the portions of the complaint which sought to recover money damages, the court stated that it "cannot, on the present record, determine the specific benefits and accruals to which plaintiff and his family are entitled pursuant to the [CBA] . . . , and the court cannot determine the amount of damages plaintiff suffered as a result of [the Town's] refusal to acknowledge and honor plaintiff's retirement."
In a separate order, also dated May 12, 2020 (hereinafter the second order), the Supreme Court, referencing its determination in the first order, denied the defendant's cross motion for summary judgment dismissing the complaint, and, in effect, for a declaration in its favor, without any additional discussion or analysis.
II. Legal Analysis
On appeal, the Town contends that it was error to grant those branches of the plaintiff's motion which were for summary judgment on the cause of action to permanently enjoin the defendant from pursuing any disciplinary charges against him, and on so much of the remaining causes of action as sought injunctive or declaratory relief. The Town is correct.
As indicated, the first cause of action seeks a declaration that the Town's disciplinary proceeding against the plaintiff is "null and void" because the Town did not have the lawful authority to prefer any disciplinary charges or take any disciplinary action against the plaintiff after the NYSLRS accepted his application for retirement benefits. The second cause of action seeks to permanently enjoin and prohibit the Town from pursuing any disciplinary charges against the plaintiff and from maintaining books or records that reflected any such disciplinary charges.
To demonstrate his entitlement to a permanent injunction, the plaintiff was required to show (1) a violation of a right presently occurring, or threatened and imminent, (2) that he had no adequate remedy at law, (3) that serious and irreparable harm will result absent the injunction, and (4) that the equities are balanced in his favor (see Anson v Incorporated Vil. of Freeport, 193 AD3d 799, 802; Caruso v Bumgarner, 120 AD3d 1174, 1175; Elow v Svenningsen, 58 AD3d 674, 675).
It should be emphasized at the outset that the complaint in this case does not seek to enjoin a private individual or entity, but rather, seeks to enjoin and restrain the conduct of the Town. In arguing that the Town lacks the legal authority to prosecute him for employment-related disciplinary infractions, the crux of the plaintiff's complaint is that "[a] body or officer proceeded, [*3]is proceeding or is about to proceed without or in excess of jurisdiction" (CPLR 7803[2]). Indeed, regardless of whether it was artfully drafted, the relief that the plaintiff seeks in the complaint is in the nature of a writ of prohibition (see Matter of Baltimore Mail S. S. Co. v Fawcett, 269 NY 379, 383-384; see also Matter of Town of Harrison Police Benevolent Assn., Inc. v Town of Harrison Police Dept., 69 AD3d 639, 640).
"The 'ancient and just' writ of prohibition is rooted deep in the common law" (La Rocca v Lane, 37 NY2d 575, 578). "The practice in issuing and enforcing the writ is regulated by statute, but its nature, object, and function, as well as the facts governing the issue thereof, are regulated by the common law" (People ex rel. Livingston v Wyatt, 186 NY 383, 394).
"[T]he extraordinary remedy of prohibition is only available to prevent a judicial or quasi-judicial body or officer from proceeding or threatening to proceed without or in excess of its jurisdiction, and then only if a clear legal right to that relief has been established" (Matter of Haggerty v Himelein, 89 NY2d 431, 435; see Matter of State of New York v King, 36 NY2d 59, 62; Bachety v Kinsella, 146 AD2d 725, 726; Matter of Ivey v Coughlin, 111 AD2d 648; see also CPLR 7803[2]). Prohibition may be available to protect against a body or officer that is "exercising or threatening to exercise an ultra vires prosecutorial function" (Matter of Haggerty v Himelein, 89 NY2d at 435). "It must be directed to some inferior judicial tribunal or officer and lies to prevent or control judicial or quasi-judicial action only, as distinguished from legislative, executive or ministerial action" (Matter of Dondi v Jones, 40 NY2d 8, 13; see Matter of Haggerty v Himelein, 89 NY2d at 435; Matter of B.T. Prods. v Barr, 44 NY2d 226, 231-232).
"The extraordinary remedy of prohibition is never available merely to correct or prevent trial errors of substantive law or procedure, however grievous" (La Rocca v Lane, 37 NY2d at 579; see Matter of Steingut v Gold, 42 NY2d 311, 315-316). "The orderly administration of justice requires that correction of litigation errors merely be left to the ordinary channels of appeal or review" (La Rocca v Lane, 37 NY2d at 579). In this regard, the writ of prohibition is "[i]n no sense . . . a substitute for an appeal, as its sole province is to prevent the inferior tribunal from usurping a jurisdiction which it does not possess" (People ex rel. Livingston v Wyatt, 186 NY at 393; see Matter of Hurwitz v New York City Commn. on Human Rights, 159 AD2d 417).
"Prohibition does not issue as of right, but only in the sound discretion of the court" (Matter of Dondi v Jones, 40 NY2d at 13). "In exercising this discretion, various factors are to be considered, such as the gravity of the harm caused by the excess of power, the availability or unavailability of an adequate remedy on appeal or at law or in equity and the remedial effectiveness of prohibition if such an adequate remedy does not exist" (id.; accord Anson v Incorporated Vil. of Freeport, 193 AD3d at 802).
"If an adequate remedy is available, the burdening of judicial process with collateral proceedings, interruptive of the orderly administration of justice [is] unjustified" (La Rocca v Lane, 37 NY2d at 579; see Matter of State of New York v King, 36 NY2d at 62-63). Accordingly, "prohibition ordinarily does not issue where . . . the grievance can be addressed by ordinary proceedings at law or in equity, such as by motion, appeal or other ordinary applications" (Matter of McLaughlin v Eidens, 292 AD2d 712, 713-714; see Matter of Dondi v Jones, 40 NY2d at 14; La Rocca v Lane, 37 NY2d at 579-580; Matter of Arcuri v Kirk, 231 AD2d 962, 963-964).
Here, contrary to the conclusion of the Supreme Court, the plaintiff failed to demonstrate that the Town was proceeding or was threatening to proceed in excess of its jurisdiction, that the plaintiff would suffer irreparable harm if the Town was not enjoined, or that the equities balanced in the plaintiff's favor.
Initially, the plaintiff failed to demonstrate that the Town was proceeding or was threatening to proceed in excess of its jurisdiction. To the contrary, the applicable state and local laws invoked here uniformly support the authority of the Chief of Police to prefer the underlying charges, and the Town's authority to subject the plaintiff to its disciplinary process.
"The Taylor Law (see Civil Service Law § 200 et seq.) requires public employers to bargain in good faith concerning all terms and conditions of employment" (Matter of Town of Wallkill v Civil Serv. Empls. Assn., Inc. [Local 1000, AFSCME, AFL-CIO, Town of Wallkill Police Dept. Unit, Orange County Local 836], 84 AD3d 968, 971, affd 19 NY3d 1066; see Matter of City of Watertown v State of N.Y. Pub. Empl. Relations Bd., 95 NY2d 73, 78). However, "[w]hile the Taylor Law policy favoring collective bargaining is a strong one, so is the policy favoring the authority of public officials over the police" (Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd., 6 NY3d 563, 575-576; see Matter of City of [*4]Schenectady v New York State Pub. Empl. Relations Bd., 30 NY3d 109, 114).
"As long ago as 1888, [the Court of Appeals] emphasized the quasi-military nature of a police force, and said that 'a question pertaining solely to the general government and discipline of the force . . . must, from the nature of things, rest wholly in the discretion of the [local] commissioners'" (Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd., 6 NY3d at 576, quoting People ex rel. Masterson v French, 110 NY 494, 499). Although "[t]his sweeping statement must be qualified today . . . the public interest in preserving official authority over the police remains powerful" (Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd., 6 NY3d at 576; see Matter of City of Schenectady v New York State Pub. Empl. Relations Bd., 30 NY3d at 114).
In analyzing this issue, the Court of Appeals has held that "the policy of the Taylor Law prevails, and collective bargaining is required, where no legislation specifically commits police discipline to the discretion of local officials" (Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd., 6 NY3d at 571). On the other hand, "where such legislation is in force, the policy favoring control over the police prevails, and collective bargaining over disciplinary matters is prohibited" (id. at 571-572; see Matter of City of Schenectady v New York State Pub. Empl. Relations Bd., 30 NY3d at 114-115).
"In general, the procedures for disciplining public employees, including police officers, are governed by Civil Service Law §§ 75 and 76, which provide for a hearing and an appeal" (Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd., 6 NY3d at 573). The Legislature has specifically provided that these "sections may be supplemented, modified or replaced by agreements negotiated between the state and an employee organization pursuant to article fourteen of this chapter" (Civil Service Law § 76[4]; see Matter of Auburn Police Local 195, Council 82, Am. Fedn. of State, County & Mun. Empls., AFL-CIO v Helsby, 62 AD2d 12, 16-17, affd 46 NY2d 1034). Accordingly, "[w]here Civil Service Law §§ 75 and 76 apply, police discipline is a permissible subject of collective bargaining" (Matter of Town of Wallkill v Civil Serv. Empls. Assn., Inc. [Local 1000, AFSCME, AFL-CIO, Town of Wallkill Police Dept. Unit, Orange County Local 836], 84 AD3d at 971; see Matter of City of Schenectady v New York State Pub. Empl. Relations Bd., 30 NY3d at 114-115; Matter of Auburn Police Local 195, Council 82, Am. Fedn. of State, County & Mun. Empls., AFL-CIO v Helsby, 62 AD2d at 16-17).
However, Civil Service Law § 76[4] provides that "[n]othing contained in section seventy-five or seventy-six of this chapter shall be construed to repeal or modify any general, special or local law or charter provision relating to the removal or suspension of officers or employees in the competitive class of the civil service of the state or any civil division" (accord Municipal Home Rule Law § 56[1]). Thus, "preexisting laws that expressly provide for control of police discipline were 'grandfathered' under Civil Service Law § 76(4)" (Matter of City of Schenectady v New York State Pub. Empl. Relations Bd., 30 NY3d at 114).
In this context, a "general law" is a "law which in terms and in effect applies alike to all counties, all counties other than those wholly included within a city, all cities, all towns or all villages" (NY Const, art IX, § 3[d][1]; see Municipal Home Rule Law § 2[5]). A "special law" is defined as a "law which in terms and in effect applies to one or more, but not all, counties, counties other than those wholly included within a city, cities, towns or villages" (NY Const, art IX, § 3[d][4]; see Municipal Home Rule Law § 2[12]; Matter of Baldwin Union Free Sch. Dist. v County of Nassau, 105 AD3d 113, 118).
Broadly speaking, "[a] town is empowered to adopt local laws relating to its property, affairs, and government, as long as those laws are not inconsistent with the terms of the Constitution of the State of New York or any 'general law' of the State" (Matter of Gizzo v Town of Mamaroneck, 36 AD3d 162, 165, quoting Municipal Home Rule Law § 10[1][i]; see NY Const, art IX, §§ 2[c][i]; 3[d][2]). "There is no similar requirement that a local law be consistent with a 'special law' enacted by the Legislature" (Matter of Gizzo v Town of Mamaroneck, 36 AD3d at 165). "A 'special law' may thus be superseded by a validly enacted local law" (id.; see Landmark Colony at Oyster Bay v Board of Supervisors of County of Nassau, 113 AD2d 741, 743; see also Municipal Home Rule Law §§ 10[1][i]; 35[4]).
In this case general law, special law, and local law all uniformly support the Town's authority to subject the plaintiff to its disciplinary process.
The Westchester County Police Act (L 1936, ch 104, as amended by L 1941, ch 812; hereinafter the Police Act) provides that a Westchester County town board, or a board of police [*5]commissioners established by a town board, "shall have power and is authorized to adopt and make rules and regulations for the examination, hearing, investigation and determination of charges, made or preferred against any member [or] members of such [Town's] police department" (see Police Act § 7 [L 1936, ch 104, as amended by L 1941, ch 812]). The Police Act further provides that "[a]ny member of such police department at the time of the hearing or trial of such charges . . . shall have the right to a public hearing and trial and to be represented by counsel at any such hearing or trial and any person who shall have preferred such charges or any part of the same shall not sit as a member of such town board or board of police commissioners upon such hearing or trial and any and all witnesses produced upon the trial shall testify under oath" (id.).
The Police Act, which by its own terms pertains only to Westchester County, constitutes a "special law" (NY Const, art IX, § 3[d][4]; see Municipal Home Rule Law § 2[12]; Matter of Baldwin Union Free Sch. Dist. v County of Nassau, 105 AD3d at 118) within the meaning of Civil Service Law § 76(4) (see Matter of Park v Kapica, 25 AD3d 801, 802, affd 8 NY3d 302). Since the Police Act predated the applicable provisions of Civil Service Law §§ 75 and 76, the Police Act "was neither repealed nor modified by the Civil Service Law" (Matter of Town of Orangetown v Orangetown Policemen's Benevolent Assn., 18 AD3d 879, 880, mod 6 NY3d 563; see Civil Service Law § 76[4]; Matter of Town of Greenburgh [Police Assn. of Town of Greenburgh], 94 AD2d 771, 771-772).
In enacting the Police Act, the State Legislature thus committed police discipline to the "power and authority" of the town boards of Westchester County (Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd., 6 NY3d at 574 [internal quotation marks omitted] [applying the Rockland County Police Act]; see Matter of Gizzo v Town of Mamaroneck, 36 AD3d at 166; Matter of Rockland County Patrolmen's Benevolent Assn. v Town of Clarkstown, 149 AD2d 516, 517-518; Matter of Town of Greenburgh [Police Assn. of Town of Greenburgh], 94 AD2d at 772; see also Matter of Montella v Bratton, 93 NY2d 424, 430-431 [applying New York City Charter and New York City Administrative Code]; Matter of Scornavacca v Leary, 38 NY2d 583, 585 [applying New York City Administrative Code]).
Town Law § 155 (L 1932, ch 634, as amended by L 1934, ch 664; L 1935, ch 889; L 1962, ch 310, § 450; L 2019, ch 696, § 1) similarly provides that "[t]he town board shall have the power and authority to adopt and make rules and regulations for the examination, hearing, investigation and determination of charges, made or preferred against any member or members of [the] police department" (cf. Village Law § 8-804). As relevant here, Town Law § 155 states that "[a]ny member of such police department at the time of the hearing or trial of such charges shall have the right to a public hearing and trial and to be represented by counsel; no person who shall have preferred such charges or any part of the same shall sit as judge upon such hearing or trial." "Witnesses upon the trial of such charges shall testify thereto under oath" (id.).
Given its terms and general applicability to all Towns in the State, Town Law § 155 constitutes a "general law" (NY Const, art IX, § 3[d][1]; see Municipal Home Rule Law § 2[5]). Like the Police Act, Town Law § 155 was also "enacted prior to Civil Service Law §§ 75 and 76" (Matter of Town of Wallkill v Civil Serv. Empls. Assn., Inc. [Local 1000, AFSCME, AFL-CIO, Town of Wallkill Police Dept. Unit, Orange County Local 836], 19 NY3d at 1069; see Matter of City of Schenectady v New York State Pub. Empl. Relations Bd., 30 NY3d at 115). Town Law § 155 thus constitutes "an existing general law" within the meaning of Civil Service Law § 76(4) (Matter of Town of Wallkill v Civil Serv. Empls. Assn., Inc. [Local 1000, AFSCME, AFL-CIO, Town of Wallkill Police Dept. Unit, Orange County Local 836], 84 AD3d at 971; see Matter of Coscette v Town of Wallkill, 281 AD2d 479, 480). Accordingly, where, as here, Town Law § 155 is applicable, "the subject of police discipline resides with the Town Board" (Matter of Town of Wallkill v Civil Serv. Empls. Assn., Inc. [Local 1000, AFSCME, AFL-CIO, Town of Wallkill Police Dept. Unit, Orange County Local 836], 19 NY3d at 1069; see Matter of City of Schenectady v New York State Pub. Empl. Relations Bd., 30 NY3d at 115).
Consistent with these general and special laws, the Town's local laws, in turn, establish "a Board of Police Commissioners, which shall consist of the Town Board" (Code of the Town of North Castle § 68-6 [Local Law No. 5-2014 of Town of North Castle (ch 39, art II, of the 1987 Code)]). The Town's local laws specifically state that "[t]he Board of Police Commissioners shall have all of the powers and duties granted to a Board of Police Commissioners under the Westchester County Police Act" (id. § 68-7 [Local Law No. 5-2014 of Town of North Castle (ch 39, art II, of the 1987 Code)]). With limited exceptions not applicable here, "all formal departmental [*6]disciplinary charges shall be brought by the Chief of Police [and] shall be heard either by the Board of Police Commissioners or by a hearing officer appointed by the Board of Police Commissioners" (id. § 68-8[B] [Local Law No. 5-2014 of Town of North Castle (ch 39, art II, of the 1987 Code)]). Any inconsistencies between the Town's local laws and the Police Act are explicitly intended to "supersede" that special law (id. § 68-9 [Local Law No. 5-2014 of Town of North Castle (ch 39, art II, of the 1987 Code)]). "In all other respects, the Police Department of the Town of North Castle shall be governed by applicable law" (id. § 68-10 [Local Law No. 5-2014 of Town of North Castle (ch 39, art II, of the 1987 Code)]).
In light of the general, special, and local laws at issue, the Chief of Police was vested with the lawful authority to investigate and interpose disciplinary charges against any member of the Town's police force, and the Town Board had the lawful authority to subject such individuals to its disciplinary process (see id. § 68-8[B] [Local Law No. 5-2014 of Town of North Castle (ch 39, art II, of the 1987 Code)]).
The record here demonstrates, and it is undisputed, that the Chief of Police preferred the subject disciplinary charges against the plaintiff for conduct that occurred during the course of the plaintiff's employment as a member of the Town's police department. In preferring the charges, the Chief of Police specifically relied upon Town Law § 155 and the Police Act. The plaintiff nevertheless maintains that these statutes are inapplicable and that he is not subject to the Town's disciplinary process because, once he filed retirement papers with the NYSLRS, he was no longer a member of the Town's police force and therefore beyond the reach of the Town's lawful authority.
Initially, the plaintiff has failed to adequately explain why the ordinary channels of review are insufficient to resolve the legal issue that he raised in the action. Both the Police Act and Town Law § 155 specifically confer upon the plaintiff the right to commence a CPLR article 78 proceeding to review any adverse disciplinary determination that might result from the Town's disciplinary process (see Town Law § 155; Police Act § 7). Although he seeks to invoke the equitable power of the courts, the plaintiff does not allege that the Town's disciplinary process is unfair or biased, and he does not contend that the due process safeguards afforded to him by that process are inadequate to protect his legal rights or interests.
Indeed, many of the cases relied upon by the plaintiff on this point actually involve proceedings that were commenced pursuant to CPLR article 78 after an adverse disciplinary determination was rendered (see Matter of Stork v Board of Trustees of Vil. of Medina, 179 AD2d 1058, 1058 [CPLR article 78 proceeding to review an adverse administrative determination]; Borges v McGuire, 107 AD2d 492, 493 ["transferred CPLR article 78 proceeding" where the petitioner sought "review and vacatur of a determination . . . finding her guilty of (disciplinary) charges"]; see also People ex rel. Fitzpatrick v Greene, 181 NY 308, 310 [writ of certiorari to review a determination dismissing the relator from police service that was allegedly rendered in violation of law]). This case law illustrates the adequacy of the existing legal remedies available to the plaintiff (see Matter of Stork v Board of Trustees of Vil. of Medina, 179 AD2d at 1058; Borges v McGuire, 107 AD2d at 493). Accordingly, even if the plaintiff's underlying legal position was correct, and it is not, the plaintiff nevertheless failed to establish the "unavailability of an adequate remedy on appeal or at law or in equity" (Matter of Dondi v Jones, 40 NY2d at 13). As previously emphasized, this failure weighs heavily against the plaintiff to the extent that he seeks to invoke the equitable powers of the courts to enjoin and prohibit the Town.
In any event, the plaintiff's underlying legal position is without merit. Contrary to the plaintiff's contention, the Town had the lawful authority to subject him to its disciplinary procedure, regardless of whether his retirement first became effective for the purposes of the NYSLRS.
The Westchester County Charter (L 1937, ch 617; hereinafter the County Charter), as amended, provides "a general grant of local administrative power" to Westchester County (People v County of Westchester, 282 NY 224, 232). Enacted by the State Legislature, it is a special law that has "the force and effect of a statute" (Boening v Nassau County Dept. of Assessment, 157 AD3d 757, 764; see generally Matter of Korn v Gulotta, 72 NY2d 363, 373).
As relevant here, the County Charter provided, with limited exception, that "all positions in the county service shall be subject to the Civil Service Law of the state" (County Charter § 179.31 [Local Law No. 1-2001 of the County of Westchester]). The County Charter established the Commissioner of Human Resources "who shall continue to exercise all of the powers and duties of a personnel officer and municipal civil service commission pursuant to the New York State Civil [*7]Service Law" (County Charter § 179.01 [Local Law No. 1-2001 of the County of Westchester]; see County Charter § 179.31 [Local Law No. 1-2001 of the County of Westchester]; see generally Matter of City of New York v City Civ. Serv. Commn., 60 NY2d 436, 441).
The State Civil Service Law provides that "[t]he civil service commission or personnel officer of a county shall administer the provisions of [the Civil Service Law] with respect to the offices and employments in the classified service of such county and the civil divisions therein" (Civil Service Law § 17[1] [emphasis added]; see Civil Service Law § 15[1][b]). "Each municipal civil service commission shall prescribe, amend and enforce suitable rules for carrying into effect the provisions of [the Civil Service Law]" (Civil Service Law § 20[1]).
As set forth in the Civil Service Law and the Westchester County Charter, the Commissioner of Human Resources of Westchester County "is charged with the duty of administering the civil service" in the Town (Matter of Acunci v Ross, 73 AD2d 643, 643; see Civil Service Law § 17[1]; County Charter § 179.31 [Local Law No. 1-2001 of County of Westchester]). Accordingly, as relevant here, the Westchester County Civil Service Rules, consistent with the County Charter and the Civil Service Law, set forth the terms and conditions of the plaintiff's employment as a police officer with the Town (see generally Matter of Mastrangelo v Board of Educ. of Mamaroneck Union Free School Dist., 116 AD2d 720, 720-721; Matter of Acunci v Ross, 73 AD2d at 643; Matter of Straight v Taylor, 268 App Div 918, 919). As relevant here, the Westchester County Civil Service Rules enumerate the conditions under which the plaintiff's employment may be lawfully terminated—including, as relevant here, resignation from employment (see Westchester County Civil Service Rule 17 [titled "Resignation"]). Westchester County Civil Service Rule 17.1, titled "Resignation in Writing," provides that "[e]xcept as otherwise provided herein, every resignation shall be in writing." "If no effective date is specified in a resignation, it shall take effect upon delivery to or filing in the office of the appointing authority" (id. § 17.2).
These aspects of the Westchester County Civil Service Law mirror the civil service provisions of the New York Code of Rules and Regulations, which similarly require that "every resignation shall be in writing" (4 NYCRR 5.3[a]), and that "[i]f no effective date is specified in a resignation, it shall take effect upon delivery to or filing in the office of the appointing authority" (id. § 5.3[b]).
The record here demonstrates that the Town treated the initial communication that it received from the NYSLRS on or about October 4, 2016, as a written resignation from the plaintiff. It is undisputed that this communication provided the Town with written notice of the plaintiff's desire to terminate his employment with the Town (see Matter of Stork v Board of Trustees of Vil. of Medina, 179 AD2d at 1058; cf. Westchester County Civil Service Rule 17.1). On this appeal, the Town does not contend that the plaintiff violated the civil service rules by failing to submit his resignation in writing.
However, even though the communication from the NYSLRS constituted a resignation in writing that satisfied the applicable civil service rules governing the termination of service, there is specific legal support for the Town's authority to disregard that resignation pending the outcome of the disciplinary proceeding that was about to be commenced in order to determine the validity of the charges of incompetency and misconduct that were actively under investigation at the time that the plaintiff's written resignation was received by the Town.
Notably, the Westchester County Civil Service Rules provide that, "[n]otwithstanding the provisions of this section, when charges of incompetency or misconduct have been or are about to be filed against an employee, the appointing authority may elect to disregard a resignation filed by such employee and to prosecute such charges" (Westchester County Civil Service Rule 17.2). "[I]n the event that such employee is found guilty of such charges and dismissed from the service, termination shall be recorded as a dismissal rather than as a resignation" (id.).
These portions of the Westchester County Civil Service Law again track the language contained in the state-wide civil service rules, which provide that, "[n]otwithstanding the provisions of this subdivision, when charges of incompetency or misconduct have been or are about to be filed against an employee, the appointing authority may elect to disregard a resignation filed by such employee and to prosecute such charges and, in the event that such employee is found guilty of such charges and dismissed from the service, his termination shall be recorded as a dismissal rather than as a resignation" (4 NYCRR 5.3[b]; see Matter of Union-Endicott Cent. School Dist. [Union-Endicott Maintenance Workers' Assn.], 85 AD3d 1432, 1432-1433).
The plaintiff does not dispute that disciplinary charges were "about to be filed" [*8]against him at the time that he evinced to the Town his desire to resign (Westchester County Civil Service Rule 17.2; see 4 NYCRR 5.3[b]). Under the circumstances, the plaintiff's written resignation to the Town was not self-executing, and the Town was vested with the discretionary authority to disregard it (see People ex rel. Brady v Martin, 145 NY 253, 260; see also Matter of Pierne v Valentine, 291 NY 333, 341-343; Matter of Eberle v LaGuardia, 285 NY 247, 252-253; cf. People ex rel. Fitzpatrick v Greene, 181 NY at 311-312).
The plaintiff does not challenge the fairness or constitutionality of the provisions that impart this discretion to the Town. As has often been observed in similar contexts, stripping the Town of this discretionary authority "would deprive [it] of the right to disqualify the offending employee from holding further office in the civil service" (Matter of Brooklyn Audit Co. v Department of Taxation & Fin., 275 NY 284, 286; see e.g. Matter of Senise v Corcoran, 146 Misc 2d 598, 600 [Sup Ct, New York County]; Matter of Baker v Kennedy, 6 Misc 2d 589, 590-591 [Sup Ct, New York County]; Matter of Flood v Monaghan, 201 Misc 560 [Sup Ct, New York County]; cf. Matter of Flynn v State Ethics Commn., Dept. of State, State of N.Y., 87 NY2d 199, 204). These concerns are particularly acute where, as here, the local discretionary authority is asserted in accordance with this State's "strong . . . policy favoring the authority of public officials over the police" (Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd., 6 NY3d at 575-576; see Matter of City of Schenectady v New York State Pub. Empl. Relations Bd., 30 NY3d at 114).
Instead, the plaintiff contends that these provisions are inapplicable because they are inconsistent with, and were superseded by, the Retirement and Social Security Law. Pursuant to this legislation, the plaintiff contends in his brief on appeal that the State Comptroller has the exclusive authority "to determine all applications for any form of retirement" (internal quotation marks and emphasis omitted). The plaintiff asserts that the State Comptroller was vested with the exclusive authority "over both the act of retirement and also over any benefit that one may receive." The plaintiff maintains that once his retirement was accepted by the NYSLRS, that acceptance "automatically severs" civil service employment "as a matter of law."
The NYSLRS was created by the Legislature, and it enjoys "the powers and privileges of a corporation" (Retirement and Social Security Law § 10). "The comptroller [is] the administrative head of the retirement system" (id. § 11[a]). "Subject to the limitations of [article 2] and of law, [the comptroller] shall adopt and may amend, from time to time, rules and regulations for the administration and transaction of the business of the retirement system and for the custody and control of its funds" (id.).
The plaintiff relies on two sections of the Retirement and Social Security Law in support of his position in this case: Retirement and Social Security Law §§ 74(b) and 374(b). Contrary to the plaintiff's contention, there is nothing in these sections to support his claims. Rather, as the Town correctly contends in its brief on appeal, these statutes demonstrate that the plaintiff's "entry into [the] Retirement System is independent of, and completely unrelated to, the Town's ability to prosecute disciplinary charges."
Retirement and Social Security Law § 74 is contained within article 2 of that chapter, which is titled "New York State Employees' Retirement System" (Retirement and Social Security Law art 2). That section provides that "[e]very application for a retirement allowance or other benefit provided by this article shall be executed and filed with the comptroller" (Retirement and Social Security Law § 74[a] [emphasis added]). "The comptroller shall have exclusive authority to determine all applications for any form of retirement or benefit provided for in this article" (id. § 74[b] [emphasis added]).
Retirement and Social Security Law § 374 is contained within article 8 of that chapter, which is titled "Police and Fire Retirement System Act" (id. § 290; see Retirement and Social Security Law art 8). That section provides that "[e]very application for a retirement allowance or other benefit provided by this article shall be executed and filed with the comptroller" (Retirement and Social Security Law § 374[a] [emphasis added]). "The comptroller shall have exclusive authority to determine all applications for any form of retirement or benefit provided for in this article" (id. § 374[b] [emphasis added]).
As the plain language of these statutes demonstrates, the comptroller has been granted the exclusive authority to determine the applications for any benefit that was conferred by articles 2 and 8 of the Retirement and Social Services Law (see Matter of Port Auth. Police Benevolent [*9]Assn., Inc. v Anglin, 12 NY3d 885, 886 n). However, the authority granted to the comptroller by Retirement and Social Security Law §§ 74(b) and 374(b) is explicitly limited in scope to those benefits that were granted under articles 2 and 8, respectively. Here, the plaintiff has failed to allege, much less demonstrate, that he has been deprived of any benefit that was conferred in those two articles of the Retirement and Social Services Law, or that he was otherwise denied any benefit that was within the scope of the comptroller's statutory authority.
The complaint in this action does not allege that the Town took, or threatened to take, any action that would have had an effect on any of the benefits that were conferred under article 2 or 8 of the Retirement and Social Security Law. Although the complaint sought various forms of injunctive and declaratory relief, it merely alleged that the Town had wrongfully withheld benefits under the CBA (causes of action three and five), and that the New York State Deferred Compensation Plan had wrongly withheld certain other benefits which that separate entity administers (cause of action four). Accordingly, given the allegations and relief sought in the complaint, this action could have no effect on the benefits administered by the comptroller pursuant to Retirement and Social Security Law §§ 74(b) and 374(b).
The plaintiff's failure to allege the denial or diminution of any benefit conferred under article 2 or 8 of the Retirement and Social Security Law renders the sections of that chapter upon which he relies irrelevant. In any event, a proper challenge to the denial or diminution of such a benefit would take the form of a CPLR article 78 proceeding to review the comptroller's determination to deny or reduce that benefit (see e.g. Matter of Bohlen v DiNapoli, 34 NY3d 434; Matter of Perry v DiNapoli, 88 AD3d 1047).
Contrary to the plaintiff's contention, there is nothing in Retirement and Social Security Law §§ 74(b) or 374(b) that purports to supersede the state and local civil service rules cited here, or that otherwise purports to grant the comptroller the authority to determine when a civil servant's employment is terminated for the purposes of a civil service disciplinary proceeding. Notwithstanding the plaintiff's repeated claims, he has failed to cite to any statute that actually supports his contention that the Town was somehow precluded from exercising its discretion to disregard the plaintiff's written resignation in accordance with Westchester County Civil Service Rule 17.2.
Although the plaintiff contends in his brief on appeal that the Town's position is "specious," and that "[t]he clearly established case law . . . debunks [its] claim," the plaintiff has failed to support these assertions. Instead, the plaintiff relies exclusively upon cases that do not involve the application of Westchester County Civil Service Rule 17.2, 4 NYCRR 5.3(b), or any other comparable law or rule (see e.g. Matter of Pierne v Valentine, 291 NY 333; Borges v McGuire, 107 AD2d 492). Nor do the cases cited by the plaintiff, which each involve the application of distinct local rules and regulations, indicate the existence of some general state-wide prohibition on the type of discretionary authority conferred by Westchester County Civil Service Rule 17.2 and 4 NYCRR 5.3(b) (cf. Matter of Union-Endicott Cent. School Dist. [Union-Endicott Maintenance Workers' Assn.], 85 AD3d at 1432 [where school district learned of sex abuse allegations against a child, it "placed (employee) on suspension, disregarded his resignation letter pursuant to 4 NYCRR 5.3(b) and filed disciplinary charges against him pursuant to Civil Service Law § 75"]).
In sum, the plaintiff failed to demonstrate that the Town was proceeding or was threatening to proceed in excess of its jurisdiction. Nor did the plaintiff demonstrate that he will suffer irreparable harm if the Town is not enjoined, or that the equities balance in his favor. As previously observed, the Police Act and Town Law provide a forum for the litigation of the plaintiff's present claims, and he does not contend that the procedural protections afforded to him by those statutes are inadequate or unfair. Included among those protections is the right to seek judicial review of any disciplinary conviction in a CPLR article 78 proceeding. Such a proceeding also would be available to challenge related determinations rendered against the plaintiff by any of the various state-level administrative bodies named in the plaintiff's complaint.
Contrary to the Supreme Court's conclusion, the plaintiff failed to demonstrate his prima facie entitlement to judgment as a matter of law on his second cause of action, which sought to permanently enjoin the Town from pursuing any disciplinary charges against him, and on so much of the first cause of action as sought a declaration that the Town lacked the lawful authority to prefer the underlying disciplinary charges against the plaintiff or subject him to its disciplinary proceeding.
The Town's submissions demonstrated its prima facie entitlement to judgment as a matter of law dismissing the second cause of action. In opposition, the plaintiff failed to raise a [*10]triable issue of fact. Accordingly, the Supreme Court should have granted that branch of the Town's cross motion which was for summary judgment dismissing the second cause of action.
The Supreme Court should have treated that branch of the Town's cross motion which was for judgment as a matter of law dismissing so much of the first cause of action as sought a declaration that the Town lacked the lawful authority to prefer disciplinary charges against the plaintiff or subject him to its disciplinary proceeding, as one seeking a declaration in its favor (see Matter of Tilcon N.Y., Inc. v Town of Poughkeepsie, 87 AD3d 1148, 1150-1151). In this regard, the Town established its entitlement to a declaration in its favor with respect to this portion of the first cause of action, and in opposition the plaintiff failed to raise a triable issue of fact. Accordingly, the court should have entered a judgment, inter alia, declaring that the Town had the lawful authority to prefer the underlying disciplinary charges against the plaintiff and subject him to its disciplinary proceeding (see Lanza v Wagner, 11 NY2d 317, 334).
On appeal, the Town further argues that it was error to grant those branches of the plaintiff's motion which were for judgment as a matter of law on so much of the remaining causes of action as sought injunctive or declaratory relief. In this regard, the Town argues, among other things, that the plaintiff failed to exhaust administrative remedies that were available to him. The Town is correct.
In support of its cross motion, the Town contended, among other things, that the causes of action in the complaint were barred due to the plaintiff's failure to exhaust administrative remedies available in the CBA. In response to this argument, the plaintiff contended that he did not need to exhaust administrative remedies because the causes of action in the complaint were not governed by the CBA. He argued that the complaint did not seek an interpretation of a CBA provision or questioning the applicability of a CBA provision to himself.
"The New York State Legislature has recognized the strong policy favoring internal grievance mechanisms and the finality of the grievance process in public collective bargaining agreements" (Matter of Board of Educ., Commack Union Free School Dist. v Ambach, 70 NY2d 501, 509-510; see Civil Service Law §§ 200[c]; 203). As the Court of Appeals has repeatedly recognized, "[p]ermitting employees to prosecute alleged violations of the agreement beyond the contractual grievance procedure obviously unsettles the finality of grievance determinations that is central to implementation of State policy, and the right to bring such proceedings is therefore restricted" (Matter of Board of Educ., Commack Union Free School Dist. v Ambach, 70 NY2d at 510; see Matter of Plummer v Klepak, 48 NY2d 486, 489-490; see also Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 57). Accordingly, as a general matter, "an employee covered by a collective bargaining agreement which provides for a grievance procedure must exhaust administrative remedies prior to seeking judicial remedies" (Spano v Kings Park Cent. School Dist., 61 AD3d 666, 670-671; see Matter of Plummer v Klepak, 48 NY2d at 489-490; Golia v Vieira, 162 AD3d 865, 867; Matter of Amorosano-LePore v Grant, 56 AD3d 663, 664-665; Feher v John Jay Coll. of Criminal Justice, 37 AD3d 307, 308).
Here, the CBA sets forth a three-step grievance procedure to be followed "[i]n the event a grievance arises concerning the interpretation or application of any provision." The CBA provides that if the initial two steps did not resolve the dispute, "then any dispute concerning the interpretation or application of [the CBA] shall be submitted to arbitration."
The first cause of action sought a declaration that the plaintiff was immediately entitled to receive all retiree benefits set forth in the CBA, including health care coverage, payment for dental coverage, and lump sum payments for sick leave, vacation, and compensatory time accruals. The third cause of action alleged that the Town was required to provide the plaintiff with certain medical and dental benefits under the terms of the CBA. Similarly, the fifth cause of action alleged that the Town was required to provide the plaintiff with certain lump sum payments for sick leave, vacation, and compensatory time accruals under the terms of the CBA.
As reflected in these allegations, the CBA contains provisions which govern the plaintiff's alleged right to receive health care coverage, dental coverage, and a lump sum payment for leave accruals. Notwithstanding the plaintiff's position that this case does not involve the CBA, his own complaint explicitly sought the enforcement of the CBA and the recovery of money damages for the Town's alleged breach of that agreement. Indeed, in the first order at issue here the Supreme Court determined that the plaintiff was entitled to the amounts that were due to him in accordance with the applicable provisions of "the collective bargaining agreement."
Contrary to the plaintiff's contention, the grievance procedure set forth in the CBA [*11]was applicable to these issues, which all involve the "interpretation or application" of the CBA's provisions (see Matter of Union-Endicott Cent. School Dist. [Union-Endicott Maintenance Workers' Assn.], 85 AD3d at 1436). Regardless of the plaintiff's retirement status, the grievance procedure outlined in the CBA is applicable to these issues (see Matter of City of Niagara Falls [Niagara Falls Police Club Inc.], 52 AD3d 1327, 1327; Matter of Dorme v Slingerland, 41 AD3d 596, 596; Matter of City of Elmira [Elmira Professional Firefighters' Assn., AFL-CIO, I.A.F.F.-Local 709], 34 AD3d 1075, 1077; Matter of City of Ithaca [Ithaca Paid Fire Fighters Assn., IAFF, Local 737], 29 AD3d 1129, 1131-1132; Sheridan v Town of Orangetown, 21 AD3d 365, 365-366; Matter of O'Connor v Police Commn. of Town of Clarkstown, 301 AD2d 654, 654; Matter of Ciccone v Jacobson, 262 AD2d 78, 78-79; cf. Meyer v City of Long Beach, 165 AD3d 649, 650; Matter of DeRosa v Dyster, 90 AD3d 1470, 1471-1472).
Indeed, the Town's submissions demonstrated that the PBA actually filed multiple grievances on the plaintiff's behalf in accordance with the procedure set forth in the CBA. Like the complaint in this action, these grievances challenged the Town's refusal, pending the outcome of the disciplinary proceeding, to provide the plaintiff with health insurance, dental insurance, and the lump sum payment of leave accruals as called for in the CBA. All of these grievances were denied in the initial stages of the three-step procedure outlined in the CBA. It is undisputed that these grievances were not pursued to the third stage of the grievance procedure: binding arbitration (cf. Matter of Union-Endicott Cent. School Dist. [Union-Endicott Maintenance Workers' Assn.], 85 AD3d 1432).
Contrary to the Supreme Court's conclusion, the plaintiff failed to establish his prima facie entitlement to judgment as a matter of law on so much of the third and fifth causes of action as sought to enjoin the Town from withholding benefits allegedly granted by the CBA, and on so much of the first cause of action as sought a declaration that the plaintiff was immediately entitled to receive all retiree benefits set forth in the CBA, including health care coverage, payment for dental coverage, and lump sum payments for sick leave, vacation, and compensatory time accruals. Accordingly, the court should have denied those branches of the plaintiff's motion.
The Town's submissions demonstrated, prima facie, its entitlement to judgment as a matter of law dismissing the third and fifth causes of action. The Town established that these causes of action were barred by the plaintiff's failure to exhaust the administrative remedies that were available to effectuate his rights under the CBA (see Matter of Julicher v Town of Tonawanda, 61 AD3d 1384, 1385; Ambrosino v Village of Bronxville, 58 AD3d 649, 651-652; Matter of Dorme v Slingerland, 41 AD3d at 596; Sheridan v Town of Orangetown, 21 AD3d at 366; Matter of O'Connor v Police Commn. of Town of Clarkstown, 301 AD2d at 654; Matter of Rissinger v State Univ. of N.Y. at New Paltz, 199 AD2d 745, 746; Carlen v Harris, 140 AD2d 288, 289-290; Matter of Flemming v Cagliostro, 53 AD2d 187, 189). The plaintiff "is bound by the terms of the agreement negotiated for and made on his behalf [and he] should not now be heard to complain, having failed to avail himself of the administrative remedies outlined in the collective bargaining agreement" (Matter of Plummer v Klepak, 48 NY2d 486, 489-490 [citation omitted]). This principle is applicable to the portions of the complaint that seek to recover damages for breach of contract (see e.g. Golia v Vieira, 162 AD3d at 867; Manfro v McGivney, 11 AD3d 662, 663), and to the portions that seek injunctive relief (see e.g. Feher v John Jay Coll. of Criminal Justice, 37 AD3d at 308; cf. CPLR 7801[1]).
In opposition, the plaintiff failed to raise a triable issue of fact. Although the plaintiff acknowledged that the grievances were not pursued to the third stage of the grievance procedure, he contended that he was not required to demonstrate that he exhausted his remedies under the CBA because submitting the grievances to binding arbitration would have been futile. In this regard, the plaintiff contended that he "lack[ed] standing to even bring a grievance." The plaintiff's contention is without merit.
"As a general proposition, when an employer and a union enter into a collective bargaining agreement that creates a grievance procedure, an employee subject to the agreement may not sue the employer directly for breach of that agreement but must proceed, through the union, in accordance with the contract" (Matter of Board of Educ., Commack Union Free School Dist. v Ambach, 70 NY2d at 508). "Unless the contract provides otherwise, only when the union fails in its duty of fair representation can the employee go beyond the agreed procedure and litigate a contract issue directly against the employer" (id.; see Buff v Village of Manlius, 115 AD3d 1156, 1157-1158). Here, the plaintiff did not allege that the PBA "failed to represent [him] fairly" (Manfro v McGivney, 11 AD3d at 663; see Matter of Gil v Department of Educ. of the City of N.Y., 146 AD3d [*12]688, 688-689; Altman v Rossi, 107 AD3d 1223, 1224).
The plaintiff's remaining arguments in opposition to the Town's prima facie showing with respect to third and fifth causes of action are without merit, and do not warrant further discussion (see Matter of Amorosano-LePore v Grant, 56 AD3d at 664-665). Accordingly, the Supreme Court should have granted those branches of the Town's cross motion which were for judgment as a matter of law dismissing the third and fifth causes of action.
Furthermore, to the extent that the first cause of action sought a declaration that the plaintiff is entitled to immediately receive all retiree benefits set forth in the CBA, including health care coverage, payment for dental coverage, and lump sum payments for sick leave, vacation, and compensatory time accruals, the Supreme Court should have treated the Town's motion as one seeking a declaration in its favor (see Matter of Tilcon N.Y., Inc. v Town of Poughkeepsie, 87 AD3d at 1150-1151). In this regard, the Town established its entitlement to a declaration in its favor with respect to this portion of the first cause of action, and in opposition the plaintiff failed to raise a triable issue of fact. Accordingly, the court should have entered a judgment, inter alia, declaring that the plaintiff is not presently entitled to receive all retiree benefits set forth in the CBA, including health care coverage, payment for dental coverage, and lump sum payments for sick leave, vacation, and compensatory time accruals (see Lanza v Wagner, 11 NY2d at 334).
Finally, the fourth cause of action alleged that the plaintiff had been denied access to certain benefits by the New York State Deferred Compensation Plan as a result of communications made by the Town regarding the disciplinary charges that had been preferred against the plaintiff. The fourth cause of action sought to permanently enjoin the Town from making such communications to that administrative entity.
Although the complaint alleged that the plaintiff was improperly denied benefits administered by the New York State Deferred Compensation Plan, that administrative entity was not named as a defendant in this action, and, in any event, a proper challenge to the denial or diminution of such a benefit would take the form of a CPLR article 78 proceeding (see e.g. Matter of Suffolk County Assn. of Mun. Empls., Inc. v Levy, 133 AD3d 674; Matter of Schmitt v Review Comm. [Copeland Cos.], 179 AD2d 959).
In any event, the fourth cause of action was framed in terms of injunctive relief, as the plaintiff sought to enjoin the Town from making communications to the New York State Deferred Compensation Plan. Accordingly, the plaintiff was required to show (1) a violation of a right presently occurring, or threatened and imminent, (2) that he had no adequate remedy at law, (3) that serious and irreparable harm will result absent the injunction, and (4) that the equities are balanced in his favor (see Anson v Incorporated Vil. of Freeport, 193 AD3d at 802; Caruso v Bumgarner, 120 AD3d at 1175; Elow v Svenningsen, 58 AD3d at 675). The plaintiff failed to establish his prima facie entitlement to judgment as a matter of law with respect to this cause of action. Accordingly, the Supreme Court should have denied that branch of the plaintiff's motion which was for judgment as a matter of law on the fourth cause of action.
The Town demonstrated its prima facie entitlement to judgment as a matter of law dismissing the fourth cause of action. In opposition, the plaintiff failed to raise a triable issue of fact. Accordingly, the Supreme Court should have granted that branch of the Town's cross motion which was for summary judgment dismissing the fourth cause of action.
III. Conclusion
In light of our determination, the first order dated May 12, 2020, is reversed insofar as appealed from, on the law, and those branches of the plaintiff's motion which were for summary judgment on the first and second causes of action, and on so much of the remaining causes of action as sought injunctive relief, are denied, and the second order dated May 12, 2020, is reversed, on the law, the Town's cross motion for summary judgment dismissing the complaint and, in effect, for a declaration in its favor is granted, and the matter is remitted to the Supreme Court, Westchester County, for the entry of a judgment, inter alia, declaring (1) that the Town had the lawful authority to prefer the underlying disciplinary charges against the plaintiff and subject him to its disciplinary proceeding, and (2) that the plaintiff is not presently entitled to receive all retiree benefits set forth in the subject collective bargaining agreement, including health care coverage, payment for dental coverage, and lump sum payments for sick leave, vacation, and compensatory time accruals (see Lanza v Wagner, 11 NY2d at 334).
CHAMBERS, J.P., GENOVESI and DOWLING, JJ., concur.
ORDERED that the first order dated May 12, 2020, is reversed insofar as appealed from, on the law, and those branches of the plaintiff's motion which were for summary judgment on the first and second causes of action, and on so much of the remaining causes of action as sought injunctive relief, are denied; and it is further,
ORDERED that the second order dated May 12, 2020, is reversed, on the law, the defendant's cross motion for summary judgment dismissing the complaint and, in effect, for a declaration in its favor is granted, and the matter is remitted to the Supreme Court, Westchester County, for the entry of a judgment, inter alia, declaring (1) that the defendant had the lawful authority to prefer the underlying disciplinary charges against the plaintiff and subject him to its disciplinary proceeding, and (2) that the plaintiff is not presently entitled to receive all retiree benefits set forth in the subject collective bargaining agreement, including health care coverage, payment for dental coverage, and lump sum payments for sick leave, vacation, and compensatory time accruals; and it is further,
ORDERED that one bill of costs is awarded to the defendant.
ENTER:
Maria T. Fasulo
Clerk of the Court